Vira v. Crowley Liner Services. Yes, Mr. Porchin. Police, the court. Good morning, Your Honors. Together with the Bedell Firm in Jacksonville, Florida, our office represents the appellant and the plaintiff, Bill Vira. It's John Woodley from the Bedell Firm that's here with me today as co-counsel. Your Honors, I'd like to highlight two quick points before I go into my argument. The legal issue at stake here is one of first impression in this circuit. And that issue is, in a termination case, whether an employer can rebut the inference of discrimination that's created by the prima facie cases by merely stating that the plaintiff was terminated because of a reduction in force without explaining at all why the plaintiff was the one selected to be included in that reduction in force. And I would like to come back to that in a moment. But the summary judgment, the second point I'd like to raise initially, is that the summary judgment order contains at least two major dispositive factual errors, which we believe caused the district court to reach the conclusion that it did. On page five of the order, the court finds that Crowley eliminated Mr. Vira's position altogether. It was undisputed that Mr. Vira was replaced the day after his termination by Ezra Clark, a 34-year-old man who'd never used FMLA leave, never requested it, and did not have any serious health condition. It was undisputed that Mr. Vira trained Mr. Clark, and the boss of both of those men, Mr. Tracy Odom, testified that Mr. Clark was doing, quote, the same job, close quote, that Mr. Vira had been doing. I thought that they, I thought that Crowley eliminated a position, said they didn't need a manager and a supervisor. Is that correct? They said, no, they did not claim that they eliminated a position. They, Mr. Clark was a manager on what's called the dry side. Mr. Vira was a supervisor on the reefer side, which is the refrigerated containers. They moved Mr. Clark over to replace Mr. Vira, and someone else came in behind Mr. Clark to replace him. And the job that Mr. Clark was doing, as Tracy Odom, the director, said, was the same job that Mr. Vira had been doing. Crowley did not argue that the position had been eliminated. Mr. Clark himself said, I replaced Bill Vira. And Bill Vira trained Mr. Clark for three weeks after Mr. Vira was notified of his termination. And he was told, as it says in the record, we want you to train your replacement. The other big error in the order is the district court's conclusion, also on page finding, I should say it's a finding, that Mr. Vira was one of 50 employees laid off in Jacksonville where Crowley has 200 total employees. Didn't Odom strip Vira of his responsibilities for power pack maintenance and assign the job to Clark after Vira had refused to respond to an equipment failure? Half of that is correct, Judge. Mr. Vira did have the power packs taken away from him on August 15th. At that point. It was assigned to Clark. It was assigned to Clark, but the record actually incorrectly states that Mr. Vira refused to go out to that sea. He felt like all the maintenance that needed to be done had been done, right? No, sir. He didn't want to go out to sea because it was nighttime and he was afraid of being out on the water. He doesn't swim. And when he told Tracy Odom that, Mr. Odom's testimony is, I was a little bit, I forget the word he used, but a little bit bothered by that. But I told him, don't worry, I'll take care of it. And seven days later, on August 7th, 2014, Mr. Odom wrote a very glowing review of Mr. Vira's performance. And that review is in the record, August 7th, 2014. And it clearly contemplates that Mr. Vira is going to continue in the employ of Crowley through the end of the year because it starts out saying, these are some issues I'd like to work with you on through the end of the year. And one of those issues was maintaining the power packs. Yet, eight days later, the power packs were taken away from Mr. Vira. Crowley represented to the court below that Mr. Vira asked that they be taken away. The record does not say that. There's no support in the record for where either the court says that or Crowley says that. Mr. Vira's testimony was, I was surprised that the power packs were taken away from me. And on August 15th, when they were taken away, Tracy Odom issued a memorandum, which is in the record, which says we're moving the power packs from Bill Vira to Ezra Clark. And Bill has done a great job with the power packs, but we want him to focus on other issues. So there's no evidence in the record other than argument of counsel that Mr. Vira had ever done a poor job or had the power packs taken away from him. And if there was any such evidence, we would argue it was pretextual based on the August 7th performance review and the August 15th notice issued. Well, isn't the issue for a reduction of force a little bit different? It's not that Mr. Vira was just terminated. He was selected not to stay and someone else was selected in his place. Isn't that a little different, legally? Yes, Your Honor. The Mazzeo v. Color Resolutions case, which is from this court, said that when a replacement takes over part of the job duties of the person who's been terminated, it's a jury question whether there has been a job elimination. And there's a jury question whether the plaintiff has been replaced. And that matters because in the Eleventh Circuit, we have a modified prima facie case for reduction in force cases. But as I think you explained, Crowley isn't arguing that it's not a replacement case. It's a reduction in force. So they're not saying we're going to eliminate certain positions. They're saying we need to get rid of 50 people. Your Honor. I mean, that's a slightly different analysis. And, Your Honor, I want to make sure I'm understanding. In fact, what happened was there were 200 people in the maintenance terminal. Mr. Vira was the only one selected for termination out of those 200. We cite the record for that in footnote 7 of our motion for summary judgment. He was the oldest among the supervisors and managers out of those 200. And he had just returned two weeks earlier from FMLA leave. And he had given notice that he was requesting additional FMLA leave to have a rehab for his heart condition. So was the motion in Lemony to exclude Odom's testimony about what Cunningham said? I couldn't see anywhere where the judge resolved that motion. You find that? Did not, Your Honor. And see, Crowley. Don't we have to decide that motion here? I believe you do, Your Honor. So, because if we were to decide that Odom's testimony about what Cunningham said was state-of-mind testimony and therefore not excluded under the hearsay rule, then the rationale that you say we would need if the case of the circuit law required rationale would be present. So, it seems to me that on the decision tree, the fulcrum, the deciding issue in this case is whether or not the motion in Lemony should have been granted or denied. I understand, Your Honor. Don't you see the case that way? I do see that if the court . . . Because if Odom's testimony is good, Odom says, well, Cunningham had legitimate reasons other than age discrimination to have Mr. Vera be removed. Well, if Ms. Cunningham's testimony were to come in, if the court ruled it were admissible, what she said was it's financial, Mr. Clark is dynamic, and I'd rather have a manager than a supervisor. Well, that's rationale. Well, it's . . . Assuming for purposes of argument, it's sufficient. And we have argued, we have pretext to rebut those because Ezra Clark had a larger salary than Mr. Vera did, as far as financial goes. As far as Mr. Clark being dynamic, the defendant argued that he had introduced all these cost-saving initiatives, and Mr. Clark himself said none of them succeeded. But Mr. Vera has a history of that. Well, the issue is not what actually happened. The issue is what the person who made the decision believed, right? Whether there's an honest belief to that effect. And if there's overwhelming evidence that what those reasons given are are incorrect, we're going to argue that that's hard to have an honest belief when Ms. Cunningham knew that Mr. Vera had implemented cost-saving measures, which were saving Crowley thousands of dollars a week and justifying, you know, paying his entire salary, which is in our motion, our response to the motion for summary judgment. Is there evidence that she knew that Mr. Clark, having initiated cost savings, was not true? We don't have that evidence in the record, Your Honor. The three circuits that have addressed the issue of whether the state, the reason of a reduction in force is a legitimate, sufficient reason, have all said it's not. This Court has never said it is. And I wanted to present to you very quickly, when we create the inference of discrimination with our prima facie cases, the defendant's argument that he was terminated as a result of a reduction in force does nothing to rebut the inference that's created without explaining why Bill Vera was the one out of 200 people that was selected in that terminal to be terminated. Okay, Mr. Fortune. You've saved five minutes for rebuttal. Mr. Coleman. Your Honor, I'm Patrick Coleman. I represent Crowley Maritime and Crowley Liner Services. Where to begin? It is true, I believe, that the Eleventh Circuit has not decided the question whether the statement of a layoff is sufficient. We have to in this case. I don't think so, Your Honor. The purpose of, I'm going to run to McDonnell Douglas, the purpose of articulating a legitimate business reason is simply to put the plaintiff on notice. What do I have to do to show pretext? Now, they keep saying 200 employees, but the record says that everyone in that terminal is represented by the Teamsters except the management people. There's seven managers. So if Conson wanted to show pretext, there's seven people. And on deposition, Mr. Vera was asked, what about this person? Should this person have been laid off instead of this person? He said, I don't know. I don't know. That was a management decision to be made. So I think just the articulation that there was a layoff, and this isn't a usual case in this respect. On September 30, all Crowley employees, and it's not on the record how many employees they have, and Mrs. King said there's 1,500 under my jurisdiction for whom I provide HR services. So at least 1,500 employees were notified on September 30, we have to right-size the organization, there are going to be layoffs. The next day, October 1, they met with Mr. Vera, and he's told you're going to be laid off. So the reason for the layoff was well set forth in a five-page memo to all employees in two languages. And if there's going to be a showing of pretext by the plaintiff, it was an easy job because there are only seven management people in that maintenance terminal. But even if the court should decide we need to be more specific, we have the conversation between Odom and Maureen Cunningham. Now, I really wish we had the testimony of Maureen Cunningham, but she unfortunately died. Our sole decision-maker is deceased. But we do have the conversation with Mr. Odom where she articulated her rationale. And this court has often held that management's selection of employees, their subjective decisions on who best suits the organization, should be left undisturbed unless there's clear evidence of discrimination. But the conversation between Cunningham and Odom, if I'm not wrong, took place after Cunningham had made the decision that Vera would be the person that would lose the job. That is not true, Your Honor. I can tell you why. Can you show me in the testimony, Odom's testimony? Yes, Your Honor. He was unclear about when it happened. He was unclear. When he was asked on what date was the conversation with Maureen Cunningham, he started by saying, I don't know the date. That's right. And in a leading question, counsel said, well, Mr. Vera was out August and September. And he said, well, it must have been October. That's how we came up with the October. And that's DACA 15-4 at 52 lines 1 through 7. I thought at the meeting at which Odom learned from Cunningham about this, she had already made the decision that Vera was the one that would be hired. Yes, she had made the decision. That's what I mean. So the point is, what I'm trying to get at is you're going to tell us, I believe, as you did in your response in the motion in Lemony, that this hearsay should be admitted because it's state of mind. It is. And the question is, is it contemporaneous? It's not contemporaneous because it's her state of mind that's being expressed after she made the decision. So don't you have to fall under the law in this circuit that deals with the continuity of state of mind? That's the Veltman doctrine. It can't be simultaneous with her making up her mind and having a conversation. Well, but it's not on the same day. It's not on the same day. She confided in her colleague, Odom, a day or so, perhaps, after she made the decision to terminate him. Correct. So therefore, under precedent, it would not be contemporaneous. The hearsay exclusion is for then existing state of mind. So you have to convince us, don't you, that there was a then existing state of mind, even though the state of mind that's being talked about occurred after the event? We gave you in our briefing a plethora of cases dealing with hearsay, and almost all of them were— None of your cases dealt with the continuity of then existing state of mind doctrine? Yes. That's Veltman. Richards v. Wells Real Estate, very close. The manager interviewed a candidate and afterwards told other employees why he didn't hire the candidate. It wasn't simultaneous after he made the decision, but there was no intervening event which would lead one to believe that she would have changed her mind. And in fact, most of the time in cases cited by— That's part of the law that allows a non-contemporaneous statement to nonetheless qualify for the hearsay exemption. Yes, Your Honor. And there's a Supreme Court case, Shepard v. United States, that said the court distinguishes between forward-looking desire to act and a backward-looking desire to act. In the cases cited by the appellant, they're criminal cases where a defendant is caught, makes a confession after the fact, and later tries to use that confession in his favor, and the court says no. That's made after the fact. It's not contemporaneous. Tell me this. So when Odom is challenging Cunningham about this decision, is it clear one way or another whether that is with the expectation that the decision can be revisited and changed? I think when he was told— In which case her response would be that would lend to the notion that it's contemporaneous? In word, Your Honor. Thank you. No, I'm just asking. I mean, you haven't answered my question. My question is what do we know about, you know, when Odom's challenging this? It's because there's some kind of expectation that it's not necessarily a final decision. When it was first—the issue was broached to Mr. Odom, and he said Mr. Vera's going to be laid off. He said, well, could we lay off a clerk? And Ms. Cunningham said, no, it's a financial decision. The clerk only makes about $35,000 a year. Mr. Vera makes $70,000 financial decision. And then she went to the rationale why Mr. Vera instead of Mr. Clark. Now— So at least it appeared that Odom thought that this was a decision that could be changed and revisited. It could be negotiated, yes. At least he was asking that question. He was asking that question, which makes it before the actual layoff, obviously. You mentioned earlier when the presiding judge asked you whether we needed to reach the question that has been posed to us of one of first impression in the circuit. And he said, do we have to? And you said you didn't think so. Can you elaborate on why you think we can decide the case without reaching that issue? Well, because even if the court were to say you need a specific reason for this individual, we have that. We have it in the testimony of Odom as to where Ms. Cunningham actually— Oh, it's an even if. Even if we were to decide. Then under that new law that would exist, we don't even get to the Odom-Cunningham question unless the law requires that testimony? Correct. Right. And I think given— So you would say we're simply allied by saying we're going to assume arguendo that that is the law of the circuit and the test is met. Yes, Your Honor. I don't think— And that's not really avoiding the question, is it? What's my backup argument, Your Honor? I think the court could say that the articulation of the reason— As a person who comes in the circuit, you'd like to have the circuit resolve the law. It's a matter of importance to employers, is it not, and to employees? It is, but my experience has been the court's trying to avoid making decisions if they can. Is there any case law in the circuit that suggests to you that nothing more than the RF rationale is required, nothing particularized is required? Do you have a case? I do, if I can find it. I think McDonnell-Douglas. Go back to McDonnell-Douglas v. Green, and when it talks about the duty of the employer to articulate a legitimate business reason, it says the reason you must do this is to put the plaintiff on notice. What does he have to show to prove pretext? The main purpose of the articulation is notification to the plaintiff, and he certainly has that. Since we've said that it's a layoff based on economic reasons, that's in the memo to all the employees, and if he wants to show there's a pretextual reason, there's only seven people. What you're saying is you can always make a pretext argument regardless of what's been in the record, but the law, as you read how it develops, has developed pretext in response to a rationale that's being explained, so you have the two. It's a scale, and you have these two things on the scale. You have both the employer's rationale that is peculiar, pardon this wrong word, particular to the employee who's been removed, and then you have the employee's pretextual arguments. Yes. And I don't really see how you can have an effective pretext argument in the absence of having first had a rationale explained other than the fact that we just need to save some money by having a RIF. Well, I think that is enough, Your Honor. If I say the reason I'm laying you off is because you're part of this RIF that we've already announced yesterday to all the employees, you're selected, and then if he says, well, it's because of my age, well, then he has to prove an age discrimination case, and that brings us to the whole gross argument. Can he show age was a but-for-reason? Can't show that. Can he show, well, he started out throwing everything against the wall. Ten causes of action. We're down to three now. There's absolutely no evidence of age in this case. Well, it's not against the law to have several grounds, right? No, not against the law, Your Honor. Nor is it unusual to see that kind of complaint. No, Your Honor. There's no evidence of FMLA interference or retaliation. He has a chance to prove these things, and he hasn't. He hasn't proved any of them. No way to rebut our clear rationale that it was an economically-based layoff. Is there a reason why the motion in limine went undecided? What is customary in the district courts in this circuit if there is a, as it seems to me, dispositive motion in limine that the judge hasn't decided? Do the parties typically ask the judge to decide that motion? Your Honor, we were right at the pretrial conference when the order came in. I can't explain why the judge didn't deal with that, but I think the judge implicitly denied it by recognizing the testimony of Orrin Cunningham, recognizing that it was not hearsay. Might it be that the district court thought the motion to limine is really directed toward trial? Yes, Your Honor. Or the district court could have concluded that he didn't believe that there was anything in the circuit that required the extra evidence, that he could decide that she could decide the case solely on the basis of the RIF rationale and therefore didn't need to decide the motion in limine. In the absence of any evidence of age discrimination . . . But the district court did rely on this, right? It did. It did. We can't really go there, can we? Because the district court did, in fact, rely on the Cunningham statement, right? It did. Yeah. If the court has no further questions, I'd like to use my remaining time just to go through the three causes of action quickly. One is age discrimination under Gross. That has to be the but-for cause. I mean, Justice Scalia, in the Burge case, used an interesting analogy. He said, in a baseball game, if the leadoff batter hits a home run and there's no more scoring, that was the but-for cause. There may have been a lot of other things in play, great pitching, great fielding, but he said anybody competent in English language would agree that in that game, that solo home run caused the victory. And there is no age discrimination to show that that was the but-for reason. Well, if we decide that there's no genuine issue of material fact that's been created by the plaintiff as to pretext, that's really the case for everything, isn't it? For all the theories of recovery. You can't show pretext, Your Honor. I know, that's my point. If we conclude that you had a legitimate non-discriminatory reason that has not been rebutted with evidence of pretext, then that takes care of all the claims, doesn't it? I think it would. That was all my question was. Instead of going through each claim by claim, they all really rise or fall based on that determination, don't they? They do, Your Honor. One way or another. Yes, Your Honor. Okay. The only faint showing of pretext where they even come close would be the breach of company policy. And I think that's where Mrs. King testified about the policy. The policy itself did not require writing. The district court said there was no evidence of writing any other case. She testified as to the policy. When asked in cross-examination another case, he said, well, do people write these things down? She said, I believe they do. That's all they have on breach of company policy, but the only writing called for in that policy is that there's a list of laid-off employees. Okay. That's the amount of time. Thank you, Your Honor. Thank you, Mr. Coleman. Mr. Fortune. Your Honors, I'm assuming that I'm going to address pretext here. If we assume that Maureen Cunningham's reasons are going to come in, the Fifth Circuit in the Deffenbau versus Walmart case, which we cited, held that when an immediate supervisor admits that the person terminated, that he had no problem working with that person, but the second-level manager decides they want to get rid of them for poor performance, that that creates an issue of pretext. And here, of course, Tracey Odom wanted to keep Mr. Vera. When Mr. Odom was asked about the reasons that Maureen Cunningham gave and he mentioned the financial reason, I questioned him and said, well, are you aware that Mr. Clark made more money than Mr. Vera? Mr. Odom immediately backpedaled and said, well, it was – and by the way, it was after I said, was there any other reason besides the financial reason that she gave you? And he said, no, that was it. And I pointed out that Clark made more than Vera. He backpedaled and said it was really more about wanting a manager rather than a supervisor. But it's like a rose by any other name. If the roles are the same – But didn't Odom suggest a clerk instead? Yes, sir. And Cunningham's response was not enough money, right? Right. Which would be a financial reason. But there's nothing to suggest that Odom ever suggested to Cunningham, well, what about somebody else who has a higher salary, right? I don't know how much that really helps us. I think it helps, Your Honor, in that what it implies, if that's admissible evidence, is that Ms. Cunningham wanted to reduce costs by cutting salaries and that the clerk's salary wasn't enough. Since Mr. Vera had a – I mean, but it can't be that that means that the employer is obliged to fire the highest paid employee. It might be the reason that the employer picks one employee versus another, which you said is something that the employer has to show as part of the layoff rationale. But it's going to always be a combination of factors, right? Well, what we have to – yes, Your Honor, it usually is in real life. Yeah. But when – so that we're not trying to deal with a moving target. Like the defendant answered interrogatories with all these different reasons why my client was fired. Yeah. We went along with the case on those. Turns out those aren't the reasons. It's the reasons now that Maureen Cunningham said. It's kind of like when the plaintiff asserts lots of theories of recovery, right? Well, exactly. And then they get whittled down and we are only dealing with a few at the end. Correct, Your Honor. And the court found that there was a prima facie case on all of those claims that we had dropped before the court ever entered its order on summary judgment. But when Odom wants to keep Mr. Vera, Odom backs off on the financial justification reason when he finds out that Clark makes more. They deviated from their corporate policy, and I will lay this in the balance. I'll put all of our eggs in one basket. If you read Tiffany King's deposition testimony in the Benz v. Crowley case where Tiffany King is the Rule 30b-6 witness for Crowley Maritime, she unequivocally says that it is our policy to document in writing whenever anyone is terminated as a result of a reduction in force. The court below conflated what happened in the Vera case with what the overall procedure is because the court said Ms. King didn't really know what the factors were that led to Mr. Vera's termination. But that doesn't change the fact that they had a policy that wasn't followed. And this court can say, and often will, that's not enough, the fact that they deviated. But where they've deviated, Odom wants to keep her. The financial reason is shaky. It's inconsistent with what's being stated. There's a lot there. They didn't follow their policy that there is evidence of pretext. And while your honors are correct the way you say, well, couldn't we interpret the evidence this way? Yes, but it's a jury question because a jury could interpret it differently. A jury could say, well, if Maureen Cunningham's evidence is coming in, it doesn't make sense to me that she was trying to cut costs by reducing salary when she could have eliminated Mr. Clark and kept Mr. Vera with a 12-year history of excellent performance right on up until the day he was terminated. They could say that, and that would not be the subject of a judgment  That would be supported by the evidence. And all we're asking, your honors, is understand the issue we face as plaintiffs when the defendant's all over the board with the reasons and we're trying to knock them all down and we did the best that we could here and I think we do have evidence from which a reasonable jury could conclude that this is pretextual. Thank you, Mr. Ford. Thank you very much, your honors. Thank you.